UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:14-CV-114-GNS-LLK

LYNDA L. FREEMAN                                                    PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                                            DEFENDANT

## MEMORANDUM OPINION & ORDER

Plaintiff, Lynda L. Freeman ("Freeman"), brings this action for review of the Department of Labor ("Department") decisions denying her claims for compensation under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA" or "Act"), 42 U.S.C. §§ 7384 to 7385s-16. Because the only decision for which review is available is not arbitrary or capricious, Plaintiff's claim is **DENIED.**

## I.  STATEMENT OF FACTS AND CLAIMS

Freeman challenges her denial of benefits under EEOICPA, which is administered by the U.S. Department of Labor ("Department"). Plaintiff's father worked for some period at the Paducah Gaseous Diffusion Plant ("PGDP"), a uranium enrichment facility. According to the complaint, Freeman's father was exposed to hazardous substances there that ultimately resulted in illness. While originally claiming entitlement under Parts B and E of the Act for other illnesses, Freeman seeks review only of her later Part B claim based on chronic beryllium disease ("CBD"), and the denial of the request to reopen that claim.

Plaintiff first sought compensation in a January 8, 2003, claim under EEOICPA Parts B and E. She asserted her father's lung cancer and emphysema were the result of hazardous exposure while working at PGDP. (Administrative R. 0713-15 [hereinafter AR]). These claims were denied in May 2006, and reconsideration was denied in June of 2006. (AR 0499-523).

In November of 2006, Plaintiff filed a claim for compensation under EEOICPA Part B for CBD along with additional medical evidence. (AR 0480). Unlike Part E, Part B compensation to surviving children is not limited to children who were minors or students at the time of the covered employee's death, or who are incapable of self-support. *See* 42 U.S.C. §§ 7384s(e)(1)(B), 7385s-3(d)(2). "Part B of EEOICPA provides for the payment of either lump-sum monetary compensation for the disability of a covered Part B employee [and specified survivors] due to an occupational illness or for monitoring for beryllium sensitivity, as well as for medical and related benefits for such illness . . . ." 20 C.F.R. § 30.0.

Following the advice of a medical consultant, the Department denied Freeman's Part B CBD claim in October 2007. (AR 0457-462). Additional medical evidence was submitted in February 2008 (AR 0258-447), and the earlier decision was vacated. (AR 0243-247). A different medical consultant then evaluated all medical evidence, including the new submissions. (AR 0198-206). Following the advice of this medical consultant that the decedent did not have CBD, a recommended decision was issued denying Freeman's claim. (AR 0188-194). After an appeal and hearing, the Department denied Freeman's claim again in August 2009. (AR 0115-123). A request for reconsideration was denied in October 2009. (AR 0086-90). A first request to reopen, submitting additional evidence of exposure to beryllium, was denied in July 2011. (AR 0031-38). A second request to reopen based upon more evidence of exposure to beryllium was denied in April 2014. (AR 0003-6). The current lawsuit followed in June 2014. (Compl. DN 1).

2

## II.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 as a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, is presented.

## III.     STANDARD OF REVIEW

Where no statutory provisions provide otherwise, administrative decisions are reviewed under the APA. 5 U.S.C. § 704. Courts reviewing administrative action under the APA set aside decisions that are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law . . . . ." 5 U.S.C. § 706(2)(A). "Under this APA standard, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "The arbitrary and capricious standard is the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole." *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003) (citation omitted). Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004) (citation omitted) (internal quotation marks omitted). "If there is any evidence to support the agency's decision, the decision is not arbitrary or capricious." *Whaley v. U.S. Dep't of Labor*, No. 3:07-CV-212, 2008 WL 2446680, at *3 (E.D. Tenn. June 17, 2008) (quoting *Coal. for Gov't Procurement*, 365 F.3d at 475). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not

arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (citation omitted) (internal quotation marks omitted).

## IV.    DISCUSSION

Freeman seeks review both of the denial of her Part B claim and the denial of the request to reopen that claim. Because this Court lacks jurisdiction to review the denial of the request to reopen, this ruling is limited to the final decision. Nonetheless, because denial of the request to reopen illustrates the fallacy of Freeman's arguments, it is briefly addressed below. In short, compensation was denied not because of a failure to link the decedent's CBD to his exposure at PGDP, but for failure to establish his diagnosis with CBD in the first place.

### A.    Requests to Reopen Are Unreviewable

Pursuant to the Court's earlier decisions in *Lanier v. U.S. Department of Labor*, No. 5:14-CV-228-GNS-LLK, 2015 WL 3607650 (W.D. Ky. June 8, 2015), and *Berry v. U.S. Department of Labor*, No. 5:14-CV-168-GNS, 2015 WL 1638495 (W.D. Ky. Apr. 13, 2015), requests to reopen EEOICPA Part B claims are not subject to judicial review. *See Berry*, 2015 WL 3607650, at *2-4; *Lanier*, 2015 WL 1638495, at *3-4. While Freeman's Complaint—filed prior to this Court's decisions in *Lanier* and *Berry*—seeks review of the denial of the request to reopen, her brief makes no mention of such a review. Freeman seems to concede that under this Court's previous rulings, review of these reopening decisions is unavailable.

Even if the motions to reopen were reviewable, the additional evidence Freeman submitted was irrelevant to her claim. Freeman's first request to reopen submitted evidence of exposure to beryllium. (AR 0069). The second request to reopen included additional evidence of

exposure in the form of a Department-recognized exposure matrix. (AR 0013-14). As the Department noted in its denials of the requests to reopen, however, Freeman was denied compensation because the record failed to establish the decedent had CBD. (AR 0005, 0036). In the analysis to determine whether he had CBD, his exposure to beryllium was assumed. Thus his exposure to beryllium was never at issue.

### B.    Arbitrary and Capricious Review

Freeman argues "the Record clearly establishes that [the decedent] had Chronic Beryllium Disease . . . ." (Freeman Br. 7, DN 24). Even if this were true, this is not the standard under which this Court must evaluate the Department's actions. Freeman must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Coal. for Gov't Procurement*, 365 F.3d at 475. Freeman has made no such showing.

EEOICPA establishes a statutory diagnostic standard for CBD:

For diagnoses before January 1, 1993, the presence of—
> (i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> (ii) any three of the following criteria:
>> (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
>> (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
>> (III) Lung pathology consistent with chronic beryllium disease.
>> (IV) Clinical course consistent with a chronic respiratory disorder.
>> (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(B). Generally, when the documentation purporting to establish CBD is dated before 1993, the pre-1993 statutory definition may be used. *See* Federal (EEOICPA) Procedure

Manual, ch. 2-1000.6 ("depends on the totality of the medical evidence").[1] Freeman's father passed away in 1991, and there is no dispute this is the applicable statutory definition. There is also no dispute Freeman's father satisfies the occupational history requirement. He "was employed at a [covered] facility where beryllium was present. Therefore, the employee meets criterion (i)." (AR 0122).

The Department's 2009 final decision found two of five criterion satisfied for a pre-1993 diagnosis. Criterion (II) was satisfied where "the employee's PFT results show diffusing lung capacity defect." (AR 0120). Criterion (IV) was met because "the employee ha[d] a clinical course of treatment consistent with a chronic respiratory disorder." (AR 0120). Three of the five criterion must be met, however, to diagnose pre-1993 CBD under the statute.

Freeman argues Criterion (I) (characteristic chest radiographic abnormalities) is also satisfied. She points out that the Department's procedure manual lists "interstitial fibrosis" as one of the diagnostic indicators of CBD, and that Freeman's father's medical records include "interstitial lung disease" and "basilar fibrosis." (Freeman Br., 10-13; AR 0360-61). She points to other findings in the medical records that the Department's guidelines list as indicative of CBD. Those findings, however, are not dispositive of a CBD diagnosis because the Department's guidelines provide that the diagnostic findings are merely indicative of and not conclusive indications of CBD.  Federal (EEOICPA) Procedure Manual, ch. 2-1000.6(c) ("[T]he DEEOIC staff accepts these diagnostic findings **as either being characteristic of** or denoting abnormalities **consistent with** CBD."  (emphasis added)). This qualification is not present in all indicators listed and indicates the Department's conclusion that those particular findings do not

---

[1] http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_part2/Chapter2-1000EligibilityCriteria.htm (accessed 6/18/2015).

always evidence the "characteristic chest radiographic abnormalities" required to diagnose CBD by statute.

The Department had a medical consultant examine Freeman's father's x-rays and other diagnostic scans to determine whether criterion (I) was met. Examining all reports available from 1970 to 1991, the consultant concluded "the available chest radiography does not show characteristic abnormalities of CBD . . . ." (AR 0200). This finding echoed an earlier consultant's finding, though that earlier consultant lacked some radiographs. (AR 0472). Regarding the findings consistent with CBD, the consultant explained those "findings were not consistently present and correlate with [conditions other than CBD]." (AR 0200). He also noted the tests showing consistencies with CBD were performed with "suboptimal" equipment. (AR 0199). The consultant regarded other tests, whose findings did not indicate CBD, more reliable.

This Court concludes the Department's decision was neither illogical nor in contravention of its published procedures. The procedure manual which Plaintiff cites as contradictory to the medical consultants' results does not dictate that the results indicated always meet criterion (I). The medical consultant's explanation for determining some findings were inconsistent with CBD was explained logically. The Department's decision followed from the conclusions of these medical consultants. (AR 0120). "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Because the Department's decision was based on a "consideration of the relevant factors" and there was no "clear error of judgment[,]" the decision is neither arbitrary nor capricious. *Id.*

C.    **Special Exposure Cohort Status is Irrelevant**

Freeman argues the Department erred in its decision because the decedent's employment at the PGDP qualified him as a member of the Special Exposure Cohort ("SEC"). (Freeman Br. 6). Among other workers, those who worked at the PGDP for at least 250 days prior to February 1, 1992 (with special exposure requirements) are included in this group. 42 U.S.C. § 7384l(14)(A). Inclusion entitles members who contract specified cancers to compensation under EEOICPA Part B without an additional demonstration of causation. 42 U.S.C. § 7384l(9)(A).

SEC status is irrelevant to Freeman's claim for two reasons. First, SEC status is relevant only for compensation for cancer. Special exposure cohort members are "a class of employees at any Department of Energy facility who likely were exposed to radiation at that facility but for whom it is not feasible to estimate with sufficient accuracy the radiation dose they received." 42 U.S.C. § 7384q(a)(1). Inclusion in the group exempts members from demonstrating causation of cancer from radiation through a radiation dose reconstruction.[2] Because this judicial review encompasses only Freeman's claim for CBD, not her prior claim for cancer, SEC status is irrelevant to this analysis. Second, employment history and SEC status are irrelevant because the statutory definition of CBD assumes causation once the disease has been diagnosed and the covered employee worked "for at least one day" at a covered facility. *See* 42 U.S.C. § 7384l(13)(B)(i); Federal (EEOICPA) Procedure Manual ch. 2-1000.4. If Freeman's father had been found to have CBD, his work at the PGDP would have been assumed to be the cause. His claim was denied not due to lack of causation of the CBD, but because he was not diagnosed with CBD in the first place.

---

[2] http://www.dol.gov/owcp/energy/regs/compliance/law/SEC-Employees.htm (accessed 6/19/2015).

V.       **CONCLUSION**

Freeman's father's medical records did not establish the statutory criteria for a diagnosis of CBD. The Department's decisions so concluding were logical and based on evidence in the record, so that its decision was not arbitrary and capricious. Consequently, Freeman's claim was properly denied. This case must be **DISMISSED**.

**Greg N. Stivers, Judge**
**United States District Court**
August 24, 2015

cc:      counsel of record